UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| KRISTEN WALTER | CIVIL ACTION NO. 15-1938 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JPS AVIATION, LLC | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court are: (1) two Motions for Summary Judgment by Defendant JPS Aviation, LLC ("JPS") (Record Documents 17 and 19); (2) JPS's Motion to Strike Plaintiff Kristen Walter's ("Walter") Memorandum in Opposition to the first Motion for Summary Judgment, original affidavit, and amended affidavit and Motion for Attorney's Fees (Record Document 24); and (3) JPS's Motion to Strike Portions of the Affidavit of Palmer Jarrell (Record Document 33), an affidavit attached to Walter's Response to JPS's Second Motion for Summary Judgment. For the reasons contained in the instant Memorandum Ruling, JPS's Motion to Strike Walter's Memorandum in Opposition, original affidavit, and amended affidavit and Motion for Attorney's Fees is **DENIED IN PART** and **GRANTED IN PART**. JPS's first Motion for Summary Judgment is **GRANTED**. As granting the first Motion for Summary Judgment disposes of all claims and all parties to the instant action, the Court need not address JPS's other Motions (Record Documents 19 and 33), and as such these Motions are **DENIED AS MOOT**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant JPS Aviation, LLC ("JPS") is a Louisiana limited liability company engaged in the business of conducting chartered flights out of Monroe, Louisiana. See Record Document 1 at ¶ 5. In February 2012, Walker began employment with JPS as a

Charter Coordinator, a job that involved scheduling chartered flights and handling correspondence related to those flights. She later became an Aviation Sales Representative in April 2013. See id. at ¶¶ 10-13.

Former Defendant Jason Bullock ("Bullock") is the son of the owner of JPS, Paul Bullock. See id. at ¶ 25. In March 2013, Bullock became President/Chief Operations Officer of JPS as well as Walter's supervisor. See id. at ¶ 14. According to Walter, Bullock subjected Walter to "an ongoing campaign of sexual harassment . . . from the time that Bullock came to JPS." Id. This campaign of unwelcome advances consisted of "inappropriate and unwelcome sexual advances and comments to and about Ms. Walter, and [Bullock] often commented on her looks in suggestive statements." Id. In her Complaint, Walter details several instances of Bullock's actions, some of which occurred in front of other employees of JPS. See id. at ¶¶ 14-23.

Walter alleges that in June 2013, she first reported Bullock's alleged sexual harassment to her immediate supervisor. See id. at ¶ 25. This supervisor reported the complaint to Paul Bullock, but Paul Bullock dismissed the complaint without taking any action. See id. Walter also reported the harassment to JPS's Director of Business Development, but again neither JPS nor anyone at the company took any action to remedy the situation. See id. at 26. Eventually, JPS terminated Walter's employment, allegedly in retaliation for her complaints of sexual harassment. See id. at ¶¶ 24-29. The Equal Employment Opportunity Commission ("EEOC") issued and mailed a notice of right to sue to Walter and her attorneys on March 3, 2015, and she filed this suit alleging violations of 42 U.S.C. § 2000e, *et seq.* on June 22, 2015. See Record Document 1-1 (the EEOC letter).

On October 22, 2015, former Defendant Bullock filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Walter had no federal employment claims against him as a matter of law. See Record Document 4. On May 18, 2016, Defendants filed their first Motion for Summary Judgment on the basis that the instant action is barred because Walter filed it more than 90 days after receipt of the EEOC letter. See Record Document 17. On June 6, 2016, Defendants filed their second Motion for Summary Judgment on the basis that there is no genuine issue of material fact on several elements of Walter's claims. See Record Document 19-3. On June 9, 2016, Defendants filed a Motion to Strike Plaintiff's untimely Memorandum in Opposition to their first Motion for Summary Judgment and its accompanying affidavit by Walter, as well as a Motion for Attorney's Fees for expenses incurred because of the submission of this affidavit. See Record Documents 22, 23, and 24. On July 27, 2016, Defendants filed a Motion to Strike Portions of the Affidavit of Palmer Jarrell, an affidavit attached to Walter's response to Defendants' second Motion for Summary Judgment. See Record Document 33.

On September 22, 2016, this Court granted Bullock's Motion to Dismiss (Record Document 4), dismissing all of Walter's claims against Bullock with prejudice and leaving JPS as the sole Defendant. See Record Document 40. Thus, the Motions remaining before the Court are JPS's two Motions for Summary Judgment, two Motions to Strike, and the Motion for Attorney's Fees contained in the first Motion to Strike. See Record Documents 17, 19, 24, and 33.

**LAW AND ANALYSIS**

**I.     Legal Standards**

   **A. The Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." Fed. R. Civ. P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 325; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075. Additionally, in deciding a summary judgment motion, courts "resolve

factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

Affidavits are a permissible and common form of evidence that may be used to oppose a motion for summary judgment. See Celotex Corp., 477 U.S. at 323. To be competent summary judgment evidence, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). However, a party may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches sworn testimony without explanation. See S.W.S. Erectors v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996). If a party submits such a "sham" affidavit, the Court may properly disregard or strike such an affidavit, grant summary judgment for the movant, and award attorney's fees to the opponent of the submitting party. See id. at 495-96; see also Doe ex rel. Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 385-86 (5th Cir. 2000); see Fed. R. Civ. P. 56(h).

### B. Prerequisites to Filing Employment Claims

Walter filed this federal employment lawsuit under 42 U.S.C. § 2000e, *et seq.*, alleging (1) sexual harassment and discrimination and (2) retaliation for reporting the alleged sexual harassment to her superiors. See Record Document 1. To file a valid federal employment discrimination claim, a plaintiff must first exhaust all administrative remedies with the EEOC. See Taylor v. Books A Million, 296 F.3d 376, 378-79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and

receives a statutory notice of right to sue." Id. at 379. A plaintiff then has ninety days from the receipt of the statutory notice of right to sue in which to file suit against his or her employer. See 42 U.S.C. § 2000e-5(f)(1). This ninety-day requirement is a "precondition to filing suit in district court" that is "strictly construed." Taylor, 296 F.3d at 379.

When a plaintiff does not allege the date of receipt of the notice of right to sue letter from the EEOC and the defendant raises the issue of timeliness, the Court must decide when the ninety-day period began to run to determine whether the suit is timely. See id. Courts, including the Fifth Circuit, have allowed for a presumption of receipt of the EEOC notice between three and seven days from the mailing of the letter. See id. at 379-80; see Jenkins v. City of San Antonio Fire Dep't, 12 F. Supp. 3d 925, 934-939 (W.D. Tex. 2014) (extensively discussing the way courts have applied this presumption and deciding that a three-day presumption is the most reasonable rule). When the date of the filing of the lawsuit is beyond the timely filing period even with the benefit of this presumption, the court may dismiss the plaintiff's suit. See Taylor, 296 F.3d at 379-80.

II. Analysis

### A. Walter's Affidavit Directly Contradicts Her Deposition Testimony, and the Court May Therefore Strike the Affidavit.

JPS's first Motion for Summary Judgment argues that Walter's suit is untimely under the ninety-day requirement for the filing of federal employment suits, citing Walter's deposition testimony as evidence that she received the notice of right to sue but failed to file suit within ninety days of its receipt. See Record Document 17-1. Walter's untimely response to this Motion included an unsigned affidavit stating that she does not remember receiving the notice of right to sue letter from the EEOC. See Record Document 22-2. Walter filed a signed version of this affidavit as an amended exhibit later the same day.

See Record Document 23. JPS then filed a Motion to Strike the response as untimely and the affidavits as sham affidavits that contradict Walter's prior sworn deposition testimony. See Record Document 24.

First, the Court declines to strike the untimely response to JPS's first Motion for Summary Judgment. The decision to allow an untimely response is ultimately at the discretion of the Court, and the Court declines to exercise that discretion to strike the response itself here. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 894-96 (1990).

Second, the Court must compare Walter's deposition testimony to her affidavit statements to determine whether the affidavit is a sham affidavit that must be stricken. The relevant portions of Walter's April 22, 2016, deposition testimony are as follows:

> Q: Go to Exhibit 9. Kristen, I'm going to try to hurry through these. This was a Notice of Right to Sue that the EEOC sent advising it's terminating you of the Charge. You did receive this notice?
> A: (Witness reviews document.) Oh I did receive it, yes.
> Q: Okay. And it shows it was sent on March the 3rd to your address at Lakeside. That was where you were living in March of 2015?
> A: '15 yes.
> Q: Okay. And it shows it was sent March the 3rd down at the bottom. Do you recall it on or around that date?
> A: I don't remember honestly.
> Q: Do you remember when you received it?
> A: I don't.
> Q: You don't dispute that you would have received it on or around March 3rd, do you?
> A: I'm not going to dispute it, but I don't remember.
> Q: But you do remember getting it in the mail at your house?
> A: Yeah.

Record Documents 17-4 and 19-5 at deposition pages 134-135.

Walter's June 8, 2016, affidavit states:

> I do not remember receiving the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission and I do not have a copy of it in my records of this lawsuit. After being made aware of the Defendants' Motion for Summary Judgment, I reviewed the documents that I had

> received from the New Orleans Field Office of the Equal Employment Opportunity Commission and I could not locate the document at issue. I do not recall and I do not believe that I brought the document at issue to my attorney's office.
>
> When asked about receiving the Notice of Right to Sue at her (sic) April 22, 2016, deposition, I indicated that I did not recall if I received it, but that the address listed was the correct address on March 3, 2015. In March of 2015, I was in the process of moving. From the second week of March through the fourth week of March I was moving from 123 Lakeside Drive, West Monroe, LA 71291 to 2901 Jasmine Street, Monroe, LA, 71201. The 125 (sic) Lakeside Drive address was an apartment complex and, therefore, the mail boxes were not located near my apartment. It was my customary and usual practice to check my mail around the 1st and 15th of each month. However, as I had already begun to move in the second week of March, and I do not recall checking my mail during that time (sic). I moved to my new address prior to April 1, 2015.
>
> I had my mail forwarded some time in March to my new address, but do not recall the exact date. I have contacted the U.S. Post Office to get an exact date that my mail began to be forwarded, but they did not have the information for me at that time and still have not provided me with the information.

Record Document 23.

JPS argues that Walter's affidavit contradicts her prior sworn deposition testimony and that her affidavit must therefore be stricken as a sham affidavit. See Record Document 24-1. In response, Walter argues that her affidavit is not a sham affidavit, but rather "an explanation of what occurred according to her best recollection when she took the time to sit down and think about what occurred in March and April of 2015" and that she "did not correctly remember the details of what occurred during the two months at issue" during her deposition. Record Document 29.

The Court finds that Walter's affidavit directly contradicts her prior deposition testimony, and therefore strikes both the unsigned affidavit and its signed replacement as sham affidavits. In her deposition, counsel for JPS handed Walter a copy of the EEOC

notice of right to sue letter. See Record Documents 17-14 and 19-5 at deposition pages 134-135. Walter then reviewed the letter and confirmed that she had received the letter in response to questioning. See id. Though Walter then stated that she did not remember the exact date when she received the letter, she also stated that she did not dispute that she would have received the letter on or around March 3, 2015. See id. Finally, Walter again confirmed that she remembered receiving the letter at her house. See id.

In her affidavit, by contrast, Walter states that she does not remember receiving the EEOC letter. See Record Document 23. She also states that she does not have a copy of the letter in her records and that she does not recall taking the document to her attorney's office. See id. She then explains that she was in the process of moving from her old address to her new address in March 2015. See id.

Thus, Walter's deposition statements that she received the EEOC letter directly contrast with her assertion that she does not remember seeing the letter. Her affidavit statements appear to the Court to be an attempt to manufacture a genuine issue of material fact on the date of receipt of the EEOC letter. The Fifth Circuit has previously rejected similar attempts by affiants to explain contradictions between affidavit statements and deposition testimony. See, e.g., Dallas Indep. Sch. Dist., 220 F.3d at 385-86 (rejecting plaintiff's attempt to explain contradictions between a 1999 affidavit and deposition testimony from 1996). The Court therefore strikes the both the original and corrected affidavits (Record Documents 22-2 and 23) and will not consider them in deciding JPS's Motion for Summary Judgment.

Finally, the Court also grants JPS's request for attorney's fees on its first Motion to Strike (Record Document 24). Rule 56(h) states that "if satisfied that an affidavit or

declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." JPS's first Motion to Strike provided notice of the request for attorney's fees and the basis for the request to Walter, and she responded to the Motion. See Record Documents 24 and 29. The Court finds that Walter submitted the affidavit in bad faith, in an attempt to manufacture a fact question with affidavit statements directly contradicting prior sworn deposition testimony. The attorney's fees awarded are limited to those incurred in drafting the Motion to Strike (Record Document 24) and JPS's Reply Memorandum in Support of its Motion for Summary Judgment (Record Document 25), as these documents directly address the sham affidavit. The instant action is referred to the Magistrate Judge for determination of the amount of attorney's fees to be awarded.

### B. Walter's Suit Is Untimely and Must Be Dismissed.

The EEOC sent its notice of right to sue letter on March 3, 2015. See Record Document 1-1. Walter filed the instant action on June 22, 2015. See Record Document 1. Thus, the date of filing of the instant action is 120 days after the date on which the EEOC mailed its notice of right to sue letter. JPS argues that the Court must dismiss Walter's suit because it is untimely under the ninety-day time limit for the filing of employment discrimination suits under 42 U.S.C. § 2000e-5(f)(1), even with the benefit of a presumption that Walter received the letter up to seven days after the EEOC sent it. See Record Document 17-1.

The Court agrees with JPS; Walter's suit is untimely. Courts in the Fifth Circuit and in other circuits have generally afforded plaintiffs the benefit of presuming that they

received the EEOC notice letter up to 7 days after the day on which the EEOC mailed it when the date of receipt is unknown or disputed. See Taylor, 296 F.3d at 379-80. In the instant action, Walter attempted to manufacture a fact question as to the date of the receipt of the letter by submitting the affidavit that contradicted her deposition testimony. See Record Document 23. Because the Court struck that affidavit as a sham affidavit, the affidavit cannot be used to demonstrate a fact question on the date of receipt of the notice.

Even if the Court had allowed the affidavit, however, it would not affect the Court's decision that Walter's suit is untimely. Taylor states that a presumed receipt date of up to seven days after mailing applies when the receipt date "is either unknown or disputed." 296 F.3d at 379. Thus, even if there were a factual dispute as to the receipt date, Walter could only gain the benefit of up to a seven-day delay of the commencement of the ninety-day clock for filing of the instant action. As she filed the instant action 120 days after the date the EEOC mailed the letter, the suit is untimely even with the benefit of this extension of time.

## CONCLUSION

Because Walter's affidavit directly contradicts her prior deposition testimony in an attempt to create a genuine issue of material fact on the receipt date of the EEOC notice of right to sue letter, JPS's Motion to Strike (Record Document 24) both the original and amended versions of this affidavit (Record Documents 22-1 and 23) is **GRANTED**. JPS's Motion to Strike (Record Document 24) the opposition memorandum itself (Record Document 22) as untimely is **DENIED**. JPS's Motion for Attorney's Fees (Record Document 24) regarding the sham affidavit is **GRANTED**, but such attorney's fees are limited to those incurred in drafting the Motion to Strike (Record Document 24) and JPS's

Reply Memorandum in Support of its Motion for Summary Judgment (Record Document 25).

JPS's first Motion for Summary Judgment (Record Document 17) on the basis that Walter's suit is untimely under the ninety-day time limit for the filing of employment discrimination suits under 42 U.S.C. § 2000e-5(f)(1), even with the benefit of a presumption that Walter received the letter up to seven days after the EEOC sent it, is **GRANTED**. Because granting the first Motion for Summary Judgment eliminates all claims and all parties, the Court need not address JPS's second Motion for Summary Judgment (Record Document 19) or its second Motion to Strike (Record Document 33). As such, those Motions are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 10th day of January, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE